IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 4:09-cr-176 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PHYLLIS STEVENS, | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |

On October 21, 2009, an Indictment was filed against Phyllis Stevens followed by a Superseding Indictment on November 18, 2009, charging her with multiple counts of fraud and related criminal counts.

On September 23, 2010, Phyllis Stevens (hereinafter "Phyllis") pled guilty to Counts 4 and 12 (wire fraud), Count 13 (computer fraud), Count 16 (conspiracy to commit money laundering), Count 21 (conspiracy to file false income tax return) and Count 22 (false income tax return) of the Second Superseding Indictment.

Phyllis was born on June 22, 1951 and is presently 59. She graduated from high school in 1969. She was ranked in the upper 10 percentile of her graduating class of 179 students. She obtained a Bachelors Degree of Sociology from Ball State University in 1973. A year later (1974), she accepted employment at Aviva Life and Annuity Company and was terminated on September 25, 2009, as a result of the current indictment.

Phyllis' childhood was excruciatingly abusive. She had been sexually abused by her father beginning when she was 2 ½ years old, which continued into her teens. She also was both physically and emotionally abused by her mother. She was diagnosed with Multiple Personality

1

Disorder in 1988 and 2010. Phyllis' marital status is controversial in that she entered into a same sex marriage with Marla Stevens (co-defendant) in 1986. The marriage was legalized in Canada in July of 2003.

The Written Plea Agreement dismisses all counts against Phyllis in exchange for her plea of guilty to Counts 4, 12, 13, 16, 21 and 22 of the Second Superseding Indictment. The Government additionally agreed that it would recommend a three-level reduction for acceptance of responsibility. Phyllis agreed to the forfeiture of all real estate listed in the indictment and of all funds with National City Bank of Indianapolis, Indiana.

Phyllis and the Government stipulated that the loss amount of the fraud is at least $5,997,825.66. The guideline provisions recommended in the Presentence Report is 70 to 87 months. This is based on a total offense level of 27 and a criminal history category of 1.[1]

The Presentence Report relies on the Federal Sentencing Guidelines in determining the numerical increases to Phyllis' sentence. At one time mandatory, the Guidelines are only advisory. *Gall v United States*, 552 U.S. 38, 50 (2007).

**I.      SENTENCING GUIDELINE CALCULATION ISSUES**

There should be no 2 level Enhancement under USSG §2B1.1(b) (15)(A). Phyllis did not attempt to obtain personal information as defined by §2Bl.1(b)(15).

Phyllis challenges the +2 Guideline Sentencing Enhancement applied in the Presentence Investigation Report. The guideline range was enhanced by two points because Phyllis abused a position of trust that facilitated the commission of the offense. This is challenged in as much as Phyllis, during the relevant period (June 2004 through September 2009), was employed as a Level 2 Compensation Specialist. Her job involved receiving telephone complaints from

---

[1] The Government seeks a 2 Level Enhancement USSG §2B1.1(b)(15)(A)

insurance agents and other clerical duties. Her employment was analogous to a bank teller or hotel clerk.

Moreover, the defendant did not exceed or abuse her authority in order to unlawfully obtain someone's identity.

## II. PHYLLIS SHOULD RECEIVE A DOWNWARD DEPARTURE PURSUANT TO 5K2.13 OF THE SENTENCING GUIDELINE MANUAL

In the latter part of 1988, Phyllis was diagnosed with Multiple Personality Disorder by Amy Konkle, M.D. Dr. Konkle completed her psychiatric residency at Indiana University School of Medicine. Her specialty is in psychiatry and neurology. She has practiced psychiatry for forty years. [See Exhibit A – Dr. Konkle's Resume].

Her diagnosis of Phyllis with Dissociative Identity Disorder (DID), formerly Multiple Personality Disorder, predates the current indictment by 22 years. Dr. Konkle's Discharge Summary of June 7, 1999, indicates that Phyllis was last seen by Dr. Konkle on September 9, 1997. The Discharge Summary indicates. "Phyllis dropped out of treatment." [See Exhibit B – Discharge Summary.] According to Dr. Konkle, Phyllis' presenting problem was ". . . with awareness of many (? number) different distinct identities which recurrently took control of 'the body.' Lost time; amnesia." [See Exhibit B].

On March 21, 2010, Dr. David Drake diagnosed Phyllis with DID. Although the Government examined Phyllis for competency to stand trial, their examination did not confirm whether Phyllis had DID. It appears the Government remains silent as to that fact.

Phyllis seeks downward departure because of her mental condition and circumstances as it relates to the commission of the offenses to which she plead.

In support for downward departure, Dr. Drake rendered his opinion with a reasonable

degree of medical certainty that Phyllis' DID was central to her illegal actions while employed with Aviva.  He concludes:

> My over-arching impression is that Phyllis Stevens underwent severe physical, sexual and emotional abuse in both homes growing up - even to the point of torture. She was also raised with the "mantra" of her adoptive mother that to be successful in life she had to make a lot of money. <u>It is my opinion that these extreme circumstances were certainly fundamental and central to her illegal actions while employed with Aviva.  She lives with an internal world where different parts of her take over different functions and act in ways she is not even aware of</u>.  (Emphasis added).

[See Exhibit C – Dr. Drake's report of March 21, 2010].

This memorandum will detail the facts that contributed to the etiology of Phyllis' dissociative disorder, in Section III, where she requests a variance.

### III.  THE COURT SHOULD GRANT PHYLLIS A VARIANCE FROM THE FEDERAL SEN1ENClNG GUIDELINES UNDER §3553(a)

Prior to *Gall* (supra), the guidelines were rough toward defendants for sentencing purposes.  The Sentencing Commission seemed to have little regard to the individual defendant. Sentencing appeared to be a numbers game, add and subtract points, for example, to a defendant's conduct, role in the offense, etc., and a sentence was pronounced. Wide discretion on the parts of a federal judge in determining a just and proper sentence was replaced with a calculus; a kind of "one shoe fits all."  The effect, in the end, was robotic in nature. It has been written, "Numbers, poets complain are soulless things, the anonymous rungs of infinity." (Author unknown). The pre-*Gall* guidelines were soulless.  Fortunately, judges and lawyers alike, joined the chorus of poets of reason and ultimately succeeded in eliminating the mandatory provisions of the sentencing guidelines by replacing its numbers game by granting the time-honored role of wide discretion to a federal judge in determining a fair sentence based upon all facts.

Phyllis has been diagnosed with DID by two psychiatrists in 1988 and 2010. Claire E. Humphrey, a friend of Phyllis, discovered Phyllis' DID in the mid-1980's and witnessed the presence of one or more of her personalities. [See Exhibit D – Character letter from Ms. Humphrey]. A long repetitive, history of childhood abuse is the cause of Phyllis' mental disorder. [Exhibit C – Dr. Drake's Report].

Excerpts of Dr. Drake's testimony from the competency hearing transcript uncovers unspeakable events to Phyllis, when she was a child ". . . her father would come down the hall to rape her. That she would lay in bed listening to the creak in the floor as he was coming down. It happened at least three times per week until she was fourteen from the time that she was adopted." [See Exhibit E – Hearing Transcript, p. 17, ll. 22-25]. ". . . Some of this occurred, she said, from the time that she was adopted until she was 14, and some of these things occurred after she came home from college, where things were repeated." [See Exhibit E, p. 18, ll. 11-13].

Dr. Drake's psychiatric report of Phyllis and the evidence introduced in the competency hearing should be considered when determining the proper sentence for Phyllis, provided in §3553(a). Phyllis has no criminal history and interestingly enough, her first thirty years as an employee for Aviva were unblemished. A question obviously arises, what prompted Phyllis to become an outlaw? Dr. Drake suggests personalities (alters) for those who are afflicted with DID notes, ". . . I've worked with lots of people who are dissociated." [See Exhibit E, p. 23, ll. 7-8].
". . . and then when things happen in their personal life, their professional, their work lives, stress increases. The switching may come back and be more intense, more present and cause more problems." [See Exhibit E, p. 23, ll. 15-18].

In Dr. Drake's psychiatric report, he concludes that " . . . parts of Phyllis were responsible

for the thefts from Aviva in her former position. . ." ". . . it is certainly possible that other parts of Phyllis were active in diverting funds without Phyllis having any or very limited knowledge of their actions." [See Exhibit C – Dr. Drake's report]. Dr. Drake's over-arching impression because of the severe physical and emotional abuse she experienced – even to the point of torture, were central to her illegal actions while employed at Aviva.

The circumstances of the offense, the abusive history of Phyllis and her mental disorder warrant a variance.

The undersigned asks the Court to fully consider Phyllis' clinical history as well as her lack of a criminal background, her age, health and her acceptance of responsibility in light of her mental disorder.

Phyllis has faced a deluge of pejorative publicity. A newspaper or a television sound bite brushes only the surface of a story. Time and paper constraints limit them. The media is not in the business of doing justice – they report. Six million dollars of embezzled money does not speak for itself only in addressing a sentence. A Court looks beyond a simple dollar amount in arriving at a sentence. It integrates all the relevant facts from the evidence, the defendant's history, including mental history, the guidelines, the law and arguments from counsel in determining a just and proper sentence. Clearly, Phyllis poses no threat to re-offending. Phyllis is a threat to no one. The cause of her criminal conduct is mental and her mental disorder is manageable. The likelihood of her holding a position susceptible to the crime in which she pled is not an issue.

Her sentence, of course, must reflect the seriousness of the offense, promote respect to the law and promote a just punishment.

What is a just sentence for Phyllis? The concept of a just sentence has plagued

philosophers for centuries. The undersigned is of the opinion that in all cases, empathy plays a role in answering the question: "What is a just sentence?"

To stand in Phyllis' shoes for a fleeting moment would be helpful in arriving at a just and proper sentence. If the Court finds that Phyllis' mental state substantially contributed to the offense or was a part of it, a just sentence calls for a more lenient sentence as opposed to one who is similarly situated but void of serious mental issues.

          Respectfully submitted,

          /s/ William L. Kutmus
          William L. Kutmus
          KUTMUS AND PENNINGTON, P.C.
          604 Locust Street, Ste. 618
          Des Moines, IA 50309
          (515) 288-3339 Telephone
          (515) 288-8629 Facsimile
          bill@kutmusandpennington.com

**CERTIFICATE OF SERVICE**

I hereby declare that on January 18, 2011, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following:

Mr. Andrew Kahl
Assistant U.S. Attorney
110 E. Court Avenue
Des Moines, IA 50309-2043
*Attorney for USA*

Mr. Jason Abendroth
110 E. Court Avenue
Des Moines, IA 50309
*U.S. Probation*

          /s/ Jodi Nissen